UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DANIEL DOVE,                                    )
                                                )
                    *Plaintiff*,                )
                                                )
        vs.                                     )        No. 1:23-cv-01546-JMS-KMB
                                                )
INDIANA DEPARTMENT OF CORRECTIONS,              )
                                                )
                    *Defendant*.                )

**ORDER**

Plaintiff Daniel Dove began working as a Correctional Officer Trainee at Defendant Indiana Department of Corrections ("IDOC") in July 2021. Beginning about a month after he was hired and continuing for several months, Mr. Dove submitted several applications for a supervisory Correctional Sergeant role at IDOC. At one point, Mr. Dove was told that he was not qualified because he did not meet the minimum requirements for the Correctional Sergeant position as he had only been employed with IDOC for a short time. Nevertheless, Mr. Dove again applied to a Correctional Sergeant position about a week after receiving that feedback. After a Hispanic woman was hired to a Correctional Sergeant position instead of Mr. Dove, he complained to IDOC that he felt he was passed over for the promotion due to his race, eventually resigned, and initiated this lawsuit. He asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), for failure to promote due to race, constructive discharge based on race and protected activity, and retaliation. [Filing No. 1.] IDOC has filed a Motion for Summary Judgment, [Filing No. 57], which is ripe for the Court's consideration.

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "'Summary judgment is not a time to be coy.'" *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)). Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party, including giving that party the benefit of conflicting evidence, and draws all reasonable inferences in that party's favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73

(7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.    Mr. Dove's Background

Mr. Dove is a Caucasian and Native American man, but when he fills out paperwork, he typically marks that he is Caucasian. [Filing No. 58-1 at 13.] In June 2021, Mr. Dove applied for a Correctional Officer Trainee position at IDOC at its Correctional Industrial Facility ("CIF") location in Pendleton, Indiana. [Filing No. 58-1 at 32; Filing No. 62-10 at 1.] At the time he applied, Mr. Dove lived in Lansing, Michigan and was aware that the commute from Lansing,

Michigan to CIF was approximately three and a half hours one-way. [Filing No. 58-1 at 32.] Mr. Dove had never worked at a county jail or prison before applying to be an IDOC Correctional Officer Trainee at CIF and never applied to any correctional facilities in Michigan or closer to his home. [Filing No. 58-1 at 29.] A Correctional Officer's job responsibilities include maintaining order among inmates, searching cells, writing reports, and conducting bed and roster counts. [Filing No. 58-1 at 45.] Before applying to be an IDOC Correctional Officer, Mr. Dove served in the Michigan Army National Guard from September 2004 to March 2012 and as a supervisor at General Motors from March 2019 to January 2020, where he oversaw approximately sixty employees. [Filing No. 58-1 at 23; Filing No. 58-1 at 117.]

**B.    Mr. Dove Is Offered the Position, Asks About Housing, and Accepts the Job**

Mr. Dove was offered the Correctional Officer Trainee position at CIF for which he applied. [Filing No. 62-10 at 2.] Before accepting the position, Mr. Dove asked CIF's Senior Human Resources Business Partner Nicholas Phillips about staff housing due to his long commute. [Filing No. 62-10 at 2.] Mr. Dove was told that there was temporary housing available while he was in training[1] but that he would still need to find a more permanent living arrangement. [Filing No. 58-1 at 89-90; Filing No. 58-5.] Mr. Dove understood the temporary nature of the provided housing. [Filing No. 58-1 at 90.] In July 2021, Mr. Dove accepted the position of Correctional Officer Trainee and moved into the temporary housing. [Filing No. 58-1 at 92.]

**C.    Mr. Dove Applies to a Correctional Sergeant Opening**

On August 24, 2021, while he was still classified as a Correctional Officer Trainee, Mr. Dove applied for a supervisory Correctional Sergeant role at CIF. [Filing No. 58-1 at 47.] Mr. Dove was encouraged to apply for the position by a Shift Lieutenant that he knew at CIF. [Filing

---

[1] The parties do not identify the length of training.

No. 58-1 at 48.]  Mr. Dove then spoke to nonparty Sergeant Andrew Wilson who provided him with knowledge of what he needed to learn to prepare for an interview for the Correctional Sergeant role.  [Filing No. 58-1 at 49.]  Mr. Wilson explained that Mr. Dove needed to know "[p]olicies and procedures, key control, radio control, certain frequencies and what [sergeants] had to do and how to act and respond in certain emergencies," like medical emergencies, prisoner on prisoner assaults, or prisoner on staff assaults.  [Filing No. 58-1 at 49-50.]  At the time he applied for the supervisory Correctional Sergeant role, Mr. Dove had not yet responded to any medical emergency or any type of assault situation.  [Filing No. 58-1 at 50.]  A multi-racial man was eventually hired for the position.  [Filing No. 58-3.]

### D.    Temporary Housing Check-In

Also on August 24, 2021, Mr. Dove was contacted and asked how long he planned to stay at the temporary housing.  [Filing No. 58-6 at 1-2.]  Mr. Dove responded that he would be staying "a couple more weeks."  [Filing No. 58-6 at 2.]  The IDOC Temporary Housing Operations Team had no issue with Mr. Dove staying a couple more weeks.  [Filing No. 58-6 at 2.]

### E.    Mr. Dove Applies to Several Correctional Sergeant Openings

About two weeks later, on September 9, 2021, Mr. Dove applied to be a Correctional Sergeant at IDOC facility Chain O'Lakes located approximately thirty miles northwest of Fort Wayne, Indiana.[2]  [Filing No. 58-1 at 52.]  Mr. Dove applied for this job because he wanted to be closer to his home in Lansing, Michigan.  [Filing No. 58-1 at 52.]  Mr. Dove did not speak to anyone at Chain O'Lakes before applying to the Correctional Sergeant position and did not receive an interview.  [Filing No. 58-1 at 52; Filing No. 58-3.]  A Caucasian man was eventually hired for the position.  [Filing No. 58-3.]

---

[2] Chain O'Lakes is approximately a two-hour drive from Lansing, Michigan.

Another two weeks later, on September 21, 2021, Mr. Dove again applied to be a Correctional Sergeant at CIF. [Filing No. 58-1 at 53; Filing No. 58-3.] A Black man was hired for this position. [Filing No. 58-3.]

About a month later, on October 21, 2021, Mr. Dove applied to be a Correctional Officer at Chain O'Lakes. [Filing No. 58-3.] Mr. Dove was never called or contacted about the position and never contacted Chain O'Lakes to inquire about the status of his application. [Filing No. 58-1 at 61-62.]

**F.      Mr. Dove Submits a Complaint About Not Being Interviewed**

That same day, on October 21, 2021, Mr. Dove contacted Mr. Phillips with a complaint about not being interviewed for the CIF Correctional Sergeant position. [Filing No. 58-4.] Mr. Dove expressed frustration that he was told by supervisors at CIF that he did not meet the minimum job requirements for the position despite his several years of service in the Michigan National Guard. [Filing No. 58-4.] He explained that his prior experience should be "well over the minimum requirements stated in the job posting." [Filing No. 58-4.] After receiving a response from Mr. Phillips, Mr. Dove again expressed frustration and confusion at being excluded from the interview process, stating:

> I was trying to gain the information from the process to gain knowledge for the future. You can ask around if you would like, but I did not expect to be selected for the promotion. I wanted to take it in as a learning process, but instead I was discredited and degraded stating I don't meet the requirements. There is nothing in the job post stating any timeframe for the position. If it had, I would not have wasted my time or anybody else's time applying.

[Filing No. 58-4 at 2-4; *see also* Filing No. 58-1 at 59.]

**G.      Mr. Dove Remains in Temporary Housing**

On November 5, 2021, the IDOC Temporary Housing Operations Team contacted Mr. Dove to inquire about his "plans to transition" from the temporary housing, stating "I know we

initially agreed to lodging through your training phase, but we are quickly approaching 4 months." [Filing No. 58-6 at 3.]  In response, Mr. Dove apologized for his "lengthy stay" and stated "[i]t is/was not my intention to stay as long as I have been there.  It is greatly appreciated."  [Filing No. 58-6 at 3.]  Mr. Dove went on to explain that he was trying to secure an apartment but was consistently placed on waiting lists and was also trying to get approval for a home.  [Filing No. 58-6 at 3.]

### H.    Mr. Dove Applies Again to a Correctional Sergeant Opening at CIF

On December 16, 2021, Mr. Dove again applied to a Correctional Sergeant position at CIF. [Filing No. 58-1 at 62; Filing No. 58-3.]  Mr. Dove was interviewed but was not selected for the position.  [Filing No. 58-3.]  A different Caucasian man was hired into this opening.  [Filing No. 58-3.]

### I.    Mr. Dove Applies to a Correctional Officer Position at Chain O'Lakes

About three weeks later on January 7, 2022, Mr. Dove applied to be a Correctional Officer at Chain O'Lakes.  [Filing No. 58-1 at 64; Filing No. 58-3.]  Mr. Dove was interviewed but was not selected for the position.  [Filing No. 58-1 at 65.]

### J.    Mr. Dove Submits a Complaint to the Warden at CIF

On January 19, 2022, Mr. Dove emailed CIF's Warden "to try to understand the Sergeant Board" because he applied multiple times and was even told that he "had a great interview" after the last interview in December.  [Filing No. 58-10 at 4.]  He also shared that:

> [It] was looking like I was going to be one of the Sergeants chosen from the board, only to be told not even ten minutes later that I wasn't selected.  Fast forward a few weeks, I worked a housing unit with one of the [Sergeants] that was selected, Sgt Jacho, and she unknowingly told me she was only selected because of diversity!!! Sgt Jacho told Ofc Williams and me that she completely bombed the interview but got the Sergeant position because she is Mexican and a female.  I also had a similar conversation with the other person selected, Sgt Cole.  I spoke to Lt Boggs and he told me the IDOC wants diversity in promotions.  This is a slap in my face!! Not

only am I qualified, but I am also diverse.  I am not only white, but I'm Native American!!! . . . In conclusion, please let me know how this situation is going to be resolved/fixed. . . .

[Filing No. 58-10 at 4-5.]

The Warden promptly responded to Mr. Dove, asking questions to understand the full picture of Mr. Dove's complaint and the situation.  [Filing No. 58-10 at 2-5.]  The Warden also sent inquiries to the Sergeant Board about Mr. Dove's complaint and asked for them to respond. [Filing No. 58-11 at 2-3.]  Non-party Sergeant Board member LaRon Bryant responded to the Warden, explaining that he did not know where Mr. Dove was getting the message about diversity hires from and that the individuals who were selected "were the best candidates for the position at the time." [Filing No. 58-11 at 2.]  He explained that Mr. Dove had "been interviewed before and [Mr. Bryant] sat on one of his [boards and] we agreed unanimously that maybe he would be a good supervisor one day, but he did not have the time or experience that we felt necessary to run a housing unit more or less to be in control of other staff and be confident enough that he would do it effectively." [Filing No. 58-11 at 2.]  Mr. Bryant also shared that "a lot [of the applicants were] sergeants from other facilities, [and] the remainder had years of [IDOC] experience along with some of them being in supervisory experiences," and highlighted that Mr. Dove only had six months of IDOC experience as of that date and appeared to only have nine months of any supervisory experience on his resume.  [Filing No. 58-11 at 2.]  Mr. Bryant also testified that he interviewed Sergeant Jacho and recommended her for the position because she interviewed very well and had consistently shown leadership qualities.  [Filing No. 58-11 at 26-27.]  Mr. Dove was not in Sergeant Jacho's interview nor was he privy to any of the answers she gave in her interview. [Filing No. 58-1 at 10-03.]  Sergeant Jacho had been employed by IDOC as a Correctional Officer

since April 2020, was on the Quick Response Team and the Shakedown Team at CIF, was an FTO Lead at CIF,[3] and was shot gun/rifle trained.  [Filing No. 62-15.]

    After collecting information, the Warden met with Mr. Dove and "berate[d] [him] with statements such as, 'You don't know what you're doing,' 'You're stupid,' and 'Who do you think you are?'"  [Filing No. 62-10 at 5.]  After the meeting, Mr. Dove emailed the Warden:

> Thank you for your time to discuss the situation.  I understand from our conversation earlier, I am not/was not in contention for the Sergeant position due to lack of time in the IDOC.  It's unfortunate that most of my training/military service does not convert much in terms of the IDOC.  Clearly I was mistaken to believe my training/military service would be more relevant, and hold more weight than it really does, to be considered for Sergeant.  If I had any inclination to the relevance of my training/military service, or lack there of [sic] any relevance, I would not have wasted everybody's time to apply for the Sergeant board.  You gave me insight to ponder on, some good and some negative, but I have nobody to blame for my shortcomings more than myself.  Again, thank you very much for taking time out of your busy schedule to address my concern in a timely manner.

[Filing No. 58-10 at 1.]

### K.    Mr. Dove Is Assigned to Work in Restricted Housing

    At some point in January 2022, Mr. Dove was assigned to work in a restricted housing unit. [Filing No. 62-10 at 5.]  While he worked that unit, "several inmates threatened to attack [him] by throwing urine and feces on [him]."  [Filing No. 62-10 at 5.]  Mr. Dove's assignment did not change.  [Filing No. 62-10 at 5.]

### L.    Mr. Dove's Stay in IDOC Temporary Housing Ends

    On February 23, 2022, Mr. Dove was contacted via email by the IDOC Temporary Housing Operations Team:

> Good afternoon, I am checking with you, I noticed you are no longer staying here but a couple days a week.  So, I am assuming you have made other arrangement[s]. As you are aware, these arrangements were not meant to be permanent or a long-

---

[3] The parties do not define "FTO," but as best the Court can surmise, it stands for "Field Training Officer."

term solution.  As we previously discussed, you will need to be out of the room and your lodging key returned before March 1st, 2022.  If you have any questions, please stop by my office.

[Filing No. 58-6 at 8.]  Mr. Dove responded via email:

I'm not sure what information you have, but I have been there every day I work.  I have tried to limit my time there, but nonetheless, I have been there.  I have not vacated the room as of yet.  I go home on my days off.  We have never discussed anything about an "end" date, but unfortunately I see you have given me a deadline to vacate in six days.  I do not have any other arrangements, but I see there have been plans made to force me to vacate/possibly have to terminate my employment since I will have to travel over three hours each way.

[Filing No. 58-6 at 8.]

### M.    Mr. Dove Emails Chain O'Lakes

At approximately 2:00 p.m. on March 14, 2022, Mr. Dove emailed Chain O'Lakes hiring staff to inquire about why he was not hired for the Correctional Officer position and stated that he did not understand why he was not selected, especially considering his IDOC and military experience.  [Filing No. 58-15 at 2.]  He also stated that he cannot "make the three hour drive each way, every single day [he] work[s]."  [Filing No. 58-15 at 2.]  At 3:00 p.m. the same day, the Warden of Chain O'Lakes responded to Mr. Dove and explained that the Chain O'Lakes team selected another candidate that it believed to be a better fit for their small team.  [Filing No. 58-15 at 2.]  In an internal email from the Warden to hiring staff not shared with Mr. Dove, the Warden noted that Mr. Dove "said stuff in the interview that was red flags (re: getting passed over for sergeant at CIF and responding poorly.)."  [Filing No. 58-15 at 1.]

### N.    Mr. Dove Resigns

In the evening on March 14, 2022, Mr. Dove submitted his two-week's notice, citing his inability to travel from his home in Lansing, Michigan to CIF.  [Filing No. 58-2.]  Mr. Dove expressed frustration at being "forced out" of the temporary housing and acknowledged that:

unless someone so graciously allows me to transfer elsewhere or give[s] me actual viable options, I am forced to terminate my employment with the IDOC. The options given are not even remotely close to being viable options, to transfer to Westville or [the Indiana State Prison] without housing/place to stay is almost the same time/distance (within 15/20 mins) as I am driving now to CIF, which defeats the purpose of wanting to transfer to Chain 'O Lakes. As I stated prior, IDOC is forcing me into this difficult decision.

[Filing No. 58-2.] Mr. Dove was offered help in transferring to either work at IDOC Westville or the Indiana State Prison ("ISP"), both of which are in Northwest Indiana, multiple times both in person and in text messages. [Filing No. 58-1 at 115 (Mr. Dove's testimony); Filing No. 58-9 at 29; Filing No. 62-4 at 34.]

### O.    This Lawsuit

Mr. Dove filed this lawsuit on August 28, 2023, asserting Title VII claims against IDOC for: (1) failure to promote due to race; (2) constructive discharge due to race and engaging in a protected activity; and (3) retaliation. [Filing No. 1; Filing No. 48.]

### III.
### DISCUSSION

### A.    Failure to Promote Due to Race Claim

IDOC argues that it is entitled to summary judgment on Mr. Dove's failure to promote claim because he cannot show that he is a member of a protected class or that IDOC had a reason or inclination to discriminate invidiously against Caucasian men, he did not have the requisite qualifications for the Correctional Sergeant positions as he acknowledged himself, and he cannot show that a member of a nonprotected class who was less qualified was promoted instead of him. [Filing No. 59 at 12-18.]

Mr. Dove argues that he is a member of a protected class ("Caucasian")[4], that he was

---

[4] While sometimes Mr. Dove refers to his Native American heritage, in response to the instant motion, he only relies on his Caucasian heritage. [Filing No. 63 at 16-17.]

qualified for the Correctional Sergeant positions, that Sergeant Jacho was less qualified but promoted instead of him, and that Sergeant Jacho's promotion establishes that IDOC's reason for not promoting Mr. Dove was pretextual.  [Filing No. 63 at 16-18.]

In reply, IDOC reiterates its arguments and highlights that IDOC hired two Caucasian men during Mr. Dove's time as an employee of IDOC—one at Chain O'Lakes in place of Mr. Dove and one at CIF.  [Filing No. 66 at 5-6.]  It therefore asserts that Mr. Dove cannot show that IDOC was discriminatorily hiring or promoting individuals.  [Filing No. 66 at 6.]  IDOC argues that Sergeant Jacho was more qualified for the position of Sergeant and had worked as a Correctional Officer since April 2020, as compared to Mr. Dove who was still classified as a Correctional Officer Trainee and had only been employed for about four months at the time he interviewed for the Correctional Sergeant position.  [Filing No. 66 at 7-8.]

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1); *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024), including Caucasian individuals, *Runkel v. City of Springfield*, 51 F.4th 736, 742 (7th Cir. 2022).  To defeat a motion for summary judgment, a plaintiff must proffer evidence that "would permit a reasonable factfinder to conclude that plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Cunningham v. Austin*, 125 F.4th 783, 788 (7th Cir. 2025).  Although that standard is the singular standard in a discrimination case, the *McDonnell Douglas* burden-shifting framework "remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson*, 892

12

F.3d at 894 (citation omitted). Because the parties proceed under *McDonnell Douglas*, the Court does as well.

Mr. Dove's claim is one of "reverse discrimination" because he is Caucasian. *See Runkel*, 51 F.4th at 742. "'Because it is the unusual employer who discriminates against majority employees,' however, we have modified the first element of a prima facie claim under the *McDonnell Douglas* framework for reverse discrimination claims." *Id.* (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006)); *see Shreffler v. City of Kankakee, Ill.*, 2024 WL 1826976 (7th Cir. Apr. 26, 2024). To succeed on a reverse discrimination failure to promote claim via the *McDonnell Douglas* burden-shifting framework, a plaintiff must offer evidence that: (1) his employer "'had reason or inclination to discriminate invidiously' against white people, or there were 'fishy' circumstances";[5] (2) he was qualified for the position; (3) he was rejected for the position; and (4) the position was given to a person outside of his protected who was similarly or less qualified than he was. *Runkel*, 51 F.4th at 742 (quoting *Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005)). "Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a prima facie case for failure to promote." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (emphasis omitted, citing *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008)). If an employee meets each element of his prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If an employer does so, the burden shifts back to the employee to show why the employer's explanation is pretextual. *Runkel*, 51 F.4th at 742-43 (citation omitted).

---

[5] In a traditional, non-reverse discrimination case, the first element of the *McDonnell Douglas* burden-shifting framework requires the plaintiff to show that he is a member of a protected class. *Cunningham v. Austin*, 125 F.4th 783, 788 (7th Cir. 2025).

Mr. Dove appears to have misunderstood the legal standard for asserting a reverse discrimination claim. His briefing only addressed whether he belonged to a protected class—a requirement relevant to traditional, non-reverse discrimination claims. *See Cunningham*, 125 F.4th at 788. He failed to argue, as required by current Seventh Circuit precedent and raised by IDOC in its summary judgment brief, that IDOC "had reason or inclination to discriminate invidiously" against Caucasians, or there were other suspicious "fishy" circumstances. *Runkel*, 51 F.4th at 742 (quoting *Gore*, 416 F.3d at 592). As a result, Mr. Dove has waived any argument regarding this element due to not asserting the correct standard nor developing an argument under it. *Anderson v. Street*, 104 F.4th 646, 654 n.3 (7th Cir. 2024) (holding that undeveloped arguments are waived) (citing *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) (noting that courts "are not responsible for constructing the parties' arguments")).

Even setting aside this waiver, the Court can still reject Mr. Dove's claim because it fails on the merits with respect to the remaining disputed elements.

## 1. Whether Mr. Dove Was Qualified to Be a Correctional Sergeant

"If the plaintiff was not qualified for any reason, then [he] falls short of establishing a prima facie case and there is no inference of discrimination." *Pafford v. Herman*, 148 F.3d 658, 669 (7th Cir. 1998) (citation omitted). Significantly, an employee's own view of his or her performance or qualifications, without more, cannot create a genuine dispute of material fact. *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) ("An *employee's* perception of his own performance, however, cannot tell a reasonable factfinder something about what the *employer* believed about the employee's abilities.") (emphasis in original).

Mr. Dove has not produced sufficient evidence to establish that he was qualified for the position of Correctional Sergeant. He had only been employed as a Correctional Officer Trainee

14

for one month before he first applied to be a Correctional Sergeant, [Filing No. 58-1 at 92 (Mr. Dove accepted the position of Correctional Officer Trainee in July 2021); Filing No. 58-1 at 47 (Mr. Dove first applied for a Correctional Sergeant on August 24, 2021)], and he had never worked at a county jail or prison in any capacity prior to July 2021, [Filing No. 58-1 at 29].  Further, Correctional Sergeants are required to know "[p]olicies and procedures, key control, radio control, certain frequencies and what [sergeants] had to do and how to act and respond in certain emergencies," like medical emergencies, prisoner on prisoner assaults, or prisoner on staff assaults, [Filing No. 58-1 at 49-50], yet at the time he first applied for the Correctional Sergeant role, Mr. Dove had not responded to any medical emergency or any type of assault situation, [Filing No. 58-1 at 50], and he did not argue that he obtained any such experience thereafter.  Lastly, and perhaps most devastating to his claim, Mr. Dove twice admitted that he did not expect to be selected for the position and accepted that his military experience did not directly transfer as sufficient requisite experience to be considered qualified for the Correctional Sergeant position.  [Filing No. 58-4 at 2-4; Filing No. 58-10 at 1; *see also* Filing No. 58-1 at 59.]  Based on this evidence, no reasonable jury could find that Mr. Dove was qualified to be a Correctional Sergeant.  *See Olsen*, 267 F.3d at 602.

    2.    *Whether the Position Was Given to a Person Outside the Protected Class Who Was Similarly or Less Qualified than Mr. Dove*

Even if he was qualified for a Correctional Sergeant position—and he was not—Mr. Dove fails to produce sufficient evidence that "the position was given to a person outside the protected class who was similarly or less qualified than [him]." *Cunningham*, 125 F.4th at 788 (quoting *Logan*, 4 F.4th at 536).  The Court considers several factors in analyzing whether the promoted person was similarly or less qualified than Mr. Dove, including whether Mr. Dove and the promoted employee: (1) had the same job description; (2) were subject to the same standards; (3)

had the same supervisor; and (4) had comparable experience, education, and other qualifications to the extent such that factors were considered by the defendant in the promotion decision. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Mr. Dove focuses on Sergeant Jacho, a Hispanic woman who was hired for a Correctional Sergeant position during the November 2021 application process, but the evidence does not show that she was similarly or less qualified than Mr. Dove. It establishes the opposite—that she was more qualified. Sergeant Jacho had been employed as a Correctional Officer since April 2020— fifteen months longer than Mr. Dove. [Filing No. 62-15.] She had shown leadership qualities throughout her employment, *see Millbrook v. IBP, Inc.*, 280 F.3d 1169,1176 (7th Cir. 2002) (an employer may use subjective evaluation criteria in a qualification assessment), and the evidence establishes that she objectively interviewed very well despite her perception of her interview, [Filing No. 58-13 at 26-27; Filing No. 62-15]. She was also on the Quick Response Team and the Shakedown Team at CIF, was an FTO Lead, and was shot gun/rifle trained. [Filing No. 62-15.] Sergeant Jacho had more direct experience for a Correctional Sergeant role than Mr. Dove.

The Court **GRANTS** IDOC's Motion for Summary Judgment as to Mr. Dove's failure to promote claim.[6]

### B.    Constructive Discharge Claims

The parties brief their arguments on Mr. Dove's race-based and protected activity-based constructive discharge claims together. The Court proceeds by addressing the parties' arguments in the same manner, consistent with the rule of party presentation. *Bernacchi v. First Chic. Ins. Co.*, 52 F.4th 324, 328 (7th Cir. 2022) ("[T]he party presentation rule . . . stands for the proposition

---

[6] Because no reasonable juror could find that Mr. Dove established a prima facie case, the Court need not address Mr. Dove's pretext argument. *See Runkel*, 51 F.4th at 742-43.

that parties 'frame the issues for decision,' whereas the courts play 'the role of neutral arbiter of matters the parties present.'") (quoting *United States v. Sineng-Smith*, 140 S. Ct. 1575, 1579 (2020)).

IDOC argues that it is entitled to summary judgment on both of Mr. Dove's constructive discharge claims because he "fails to establish that he was discriminated against based on his race or engaging in a protected activity to the point where a reasonable person would have felt compelled to resign." [Filing No. 59 at 18.] It argues that "there is no evidence of discrimination based on [Mr. Dove's] race or engaging in a protected activity where he was treated less favorably than any other employee at CIF." [Filing No. 59 at 18.] IDOC highlights that Mr. Dove "chose to apply to work at CIF in Indiana" despite the long commute, knew that the provided housing was only temporary, and was offered help to transfer to two other correctional facilities in Northern Indiana, which he declined. [Filing No. 59 at 19-24.] IDOC also asserts that the individuals that were hired instead of him to the Correctional Sergeant roles were more qualified and were not employed as Correctional Officer Trainees when they applied. [Filing No. 59 at 25.]

Mr. Dove asserts that he was discriminated against when his access to the temporary housing was revoked and that IDOC's actions rose to the level of constructive discharge. [Filing No. 63 at 12-14.] He also argues that he was continually assigned to work in the restricted housing unit where he was threatened by inmates, which also amounts to constructive discharge. [Filing No. 63 at 14-15.] Mr. Dove reiterates that Sergeant Jacho was a similarly situated employee who was treated more favorably and that "IDOC's explanations for its adverse action are pretextual." [Filing No. 63 at 15.]

In reply, IDOC argues that Mr. Dove "fails to adequately develop his argument on either of these two claims" because he "merely mentions his allegations of constructive discharge with a

brief citation and then a couple of brief paragraphs." [Filing No. 66 at 8 (citations omitted).] IDOC asserts that, in any event, there is no evidence to support either claim of constructive discharge. [Filing No. 66 at 8-9.] It reiterates that Mr. Dove knew that the housing was temporary and was aware that his commute was three and a half hours when he applied and accepted employment. [Filing No. 66 at 9.] IDOC argues that "[n]o reasonable employee would believe their workplace must provide with permanent housing when they were informed and communicated with about the temporariness of the housing option." [Filing No. 66 at 10.]

The primary question here is whether the evidence would permit a reasonable factfinder to conclude that Mr. Dove's race or his protected activity "caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Constructive discharge qualifies as an adverse employment action. *Beverly v. Abbott Lab'ys*, 107 F.4th 737, 745 (7th Cir. 2024). To establish constructive discharge, Mr. Dove must show "that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id.* (quoting *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010)). The Seventh Circuit recognizes two forms of constructive discharge: "when an employee resigns due to discriminatory harassment, and '[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated . . . .'" *Id.* (quoting *Equal Emp. Opportunity Comm'n v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)). The first form "requires 'a discriminatory work environment even more egregious than the high standard for hostile work environment.'" *Beverly*, 107 F.4th at 745 (quoting *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1119 (7th Cir. 2022)). The second form requires the plaintiff to show that he was forced to resign because his employer's actions "communicate[d] to the employee that he 'immediately and unavoidably will

be terminated.'" *Beverly*, 107 F.4th at 746 (quoting *Wright v. Illinois Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 529 (7th Cir. 2015)).

Mr. Dove appears to misunderstand the constructive discharge theory of liability. He contends that all he must prove is "working conditions sufficiently intolerable so that a reasonable person standing in the position of the employee would have resigned or retired," [Filing No. 62 at 14 (citing *Wright*, 798 F.3d at 526)], but this is not fully accurate. The Seventh Circuit has identified two forms of constructive discharge and has outlined each form's requirements. Mr. Dove does not acknowledge either form. Rather, he merely argues in general that his working conditions were intolerable. Even more troublesome, however, is that Mr. Dove completely misses the main question of whether the alleged constructive discharge was caused by his race or protected activity. *Ortiz*, 834 F.3d at 765. In fact, neither his race nor any protected activity is mentioned in his constructive discharge argument. [Filing No. 63 at 14-15.] The Court generously proceeds to dispose of the claims on the merits but cautions Mr. Dove's counsel that "Seventh Circuit precedent is clear that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (internal quotations and citation omitted).

### 1. First Form - Discriminatory Harassment

Mr. Dove has failed to present sufficient evidence to meet the high threshold for a claim of constructive discharged based on discriminatory harassment due to either race or protected activity. There is no evidence that Mr. Dove's race or protected activity influenced the temporary housing arrangement or his assignment to work in the restricted housing unit. Crucially, it is undisputed that the temporary nature of the housing was disclosed to Mr. Dove from the outset and that he acknowledged that disclosure and accepted the position knowing both the terms of the

housing and the length of his commute.  [Filing No. 58-1 at 90; Filing No. 58-6.]  Further, the IDOC Temporary Housing Team proactively communicated with Mr. Dove throughout his stay, reminding him of the temporary nature of the housing and assessing his progress toward securing permanent accommodations.  To be sure, these efforts began several weeks before Mr. Dove filed any complaint.  [Filing No. 58-4 (first complaint submitted on October 21, 2021); Filing No. 58-6 at 1-2 (initial check-in from the IDOC Temporary Housing Team sent on August 24, 2021, inquiring about Mr. Dove's timeline and offering a short extension).]  The record makes clear that IDOC acted consistently and transparently, without any discriminatory deviation.  Mr. Dove accepted the position fully aware of the housing conditions, and the evidence only shows that his choice to resign due to the commute stemmed from his own circumstances—not from any improper conduct by IDOC.  No reasonable juror could conclude that IDOC's actions constituted harassment based on his race or protected activity amounting to constructive discharge.  *Beverly*, *107 F.4th at 745*.

As to his assignment in the restrictive housing unit, Mr. Dove asserts in his response that he reported the inmates' threats to a supervisor and requested a reassignment, citing his Affidavit. [Filing No. 63 at 8 (citing Filing No. 62-10 at 5).]  His Affidavit, however, does not support that contention.  It merely states that he was threatened and remained assigned to the unit—it does not state that he ever filed a complaint or requested a transfer.  [Filing No. 62-10 at 5.]  More importantly, Mr. Dove fails to present any argument or evidence suggesting that his continued assignment to the restrictive housing unit was the result of harassment based on race or protected activity, nor does he argue or demonstrate that the assignment rose to the level of severe and pervasive mistreatment necessary to meet the high standard for a constructive discharge claim.

*Ortiz*, 834 F.3d at 765; *Beverly*, 107 F.4th at 745.  After all, he worked in a prison—an inherently challenging environment where inmate threats, while serious, are unfortunately not uncommon—and without any showing that the assignment was retaliatory or discriminatory in nature, his claim cannot survive summary judgment.

### 2.    Second Form - Resignation in Anticipation of Termination

"Working conditions become intolerable when an employer acts in a manner so as to have communicated to a reasonable employee that [ ]he will be terminated, and the [ ] employee resigns. In other words, constructive discharge [ ] occurs where, based on an employer's actions, the handwriting [was] on the wall and the axe was about to fall." *Scaife*, 49 F.4th at 1119 (quotations and citations omitted); *see also Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998) ("Constructive discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired.")

Mr. Dove has failed to produce any evidence that an "axe was about to fall" and that he resigned in anticipation of being fired.  *Scaife*, 49 F.4th at 1119; *Bragg*, 164 F.3d at 377.  In fact, the evidence reveals that Mr. Dove resigned because of the commute, not because he thought he was going to be terminated.  And the undisputed evidence further establishes that IDOC offered Mr. Dove several alternative placements closer to Northern Indiana.  These offers are the opposite of a threat of termination.

In sum, Mr. Dove has failed to present sufficient evidence from which a reasonable jury could conclude that he was constructively discharged in any form, either based on race or protected activity.  The Court **GRANTS** IDOC's Motion for Summary Judgment as to Mr. Dove's constructive discharge claims based on both race and protected activity.

C.    **Retaliation Claim**

IDOC asserts that it is entitled to summary judgment on Mr. Dove's claim that it "violated Title VII 'as a result of not hiring [Mr. Dove] due to [Mr. Dove] engaging in protected activity.'" [Filing No. 59 at 25 (quoting Filing No. 1 at 3).]  IDOC asserts that Mr. Dove cannot establish an adverse action or a causal connection between an adverse action and his complaints.  [Filing No. 59 at 25.]  It contends that "[t]here is no evidence that [Mr.] Dove submitting a complaint for not being promoted was the basis for him [ ] not being hired at a different facility."  [Filing No. 59 at 25-26.]

Mr. Dove argues that the materially adverse actions supporting his retaliation claim include "revoking his staff housing and refusing to transfer him to another facility."  [Filing No. 63 at 18.] He contends that there is a causal connection between his complaints and the revocation of his housing because, after he submitted his complaint on January 19, 2022, the IDOC Temporary Housing Team sent a check-in email about his progress on securing permanent housing and that "[s]hortly after this conversion," Mr. Dove was ordered to vacate.  [Filing No. 63 at 18-19.]  Mr. Dove also contends that after he complained of race discrimination, he asked the Warden for assistance in moving to a facility closer to his home and she "refused to help him transfer." [Filing No. 63 at 19.]

In reply, IDOC reiterates its arguments about adverse actions and causal connection. [Filing No. 66 at 10-11.]  It asserts that Mr. Dove knew the housing was temporary from the outset, that he was contacted multiple times regarding his permanent living arrangement search, and that the revocation was not retaliatory but rather eight months in the making.  [Filing No. 66 at 11.] IDOC also argues that Mr. Dove was offered help in transferring to either Westville or ISP, which are both closer to his home in Michigan, but that he refused the help.  [Filing No. 66 at 11-12.]

Title VII has an anti-retaliation provision that prohibits an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To survive summary judgment on a Title VII retaliation claim, Mr. Dove "must produce evidence from which a reasonable jury could find that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Galvan v. Indiana*, 117 F.4th 935, 946 (7th Cir. 2024) (citing *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023)).

Mr. Dove has failed to produce evidence to survive summary judgment on this claim. As to the revocation of his housing, he relies on the timing between his race discrimination complaint on January 19, 2022, and IDOC Temporary Housing Team's email on February 23, 2022, notifying him that it appeared he was no longer staying at the temporary housing full-time and instructing him to return the keys by March 1, 2022. However, timing alone is generally not enough to prove retaliatory intent. *Galvan*, 117 F.4th at 947 (citing *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022)). Further, any inference of retaliation based solely on temporal proximity is negated by a clear, non-retaliatory explanation: the housing was always intended to be temporary, and Mr. Dove had already stayed for approximately eight months. *Jokich*, 42 F.4th at 634 (noting that "any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action").

As to Mr. Dove's argument that IDOC retaliated against him by refusing to transfer him to another facility, this argument ignores the undisputed evidence that Mr. Dove himself testified that he was offered assistance in transferring to either Westville or ISP, and he acknowledged that offer in his resignation email. [Filing No. 58-1 at 115; Filing No. 58-2; *see also* Filing No. 58-9 at 29; Filing No. 62-4 at 34.] It appears that Mr. Dove's true preference was to transfer specifically to

Chain O'Lakes, which is still approximately a two-hour drive from Lansing, Michigan, but he has presented no evidence that a position was available there at the time or that IDOC specifically left Chain O'Lakes off the transfer options because he had complained of race discrimination.

Moreover, to the extent Mr. Dove's claim is based on the allegation that Chain O'Lakes did not hire him because of his protected activity at CIF, as the claim appears to be originally framed in his Complaint, [Filing No. 1 at 3 (alleging that IDOC violated Title VII "as a result of not *hiring* [Mr. Dove] due to [Mr. Dove] engaging in protected activity") (emphasis added)], this argument is meritless for two reasons. First, he framed his theory of the claim differently in his briefing. [*See* Filing No. 63 at 18-19 (no mention of failure to hire or Chain O'Lakes).] Second, Mr. Dove submitted his CIF race discrimination complaint *after* he applied to work at Chain O'Lakes and was not selected. [Filing No. 58-1 at 52-65 (Mr. Dove applied to Chain O'Lakes on September 9, 2021, October 21, 2021, and January 7, 2022); Filing No. 58-10 at 4 (Mr. Dove submitted his race discrimination complaint to CIF on January 19, 2022).]

In sum, Mr. Dove has failed to present sufficient evidence from which a reasonable jury could conclude that his race discrimination complaint was a motivating factor in IDOC's revocation of his temporary housing, in the locations that it offered to help him transfer to, or in Chain O'Lakes' hiring decisions. The Court therefore **GRANTS** IDOC's Motion for Summary Judgment as to Mr. Dove's Title VII retaliation claim.

## IV.
### CONCLUSION

Ultimately, Mr. Dove has presented no evidence that he was qualified for a Correctional Sergeant role, no evidence that he was constructively discharged due to his race or protected activity, and no evidence that IDOC engaged in unlawful retaliation. The Court **GRANTS** IDOC's Motion for Summary Judgment, [57].

Final judgment shall enter accordingly.

Date: 4/16/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**